**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Louis Rex CURTIS, Defendant-Appellant.**

**No. 75–1596.**

United States Court of Appeals,
Tenth Circuit.

June 11, 1976.

Rehearing Denied July 12, 1976.

Paul F. Fernald, Oklahoma City, Okl., for defendant-appellant.

John E. Green, First Asst. U. S. Atty., Oklahoma City, Okl. (David L. Russell, U. S. Atty., Oklahoma City, Okl., with him on the brief), for plaintiff-appellee.

Before HILL and SETH, Circuit Judges, and TEMPLAR, Senior District Judge.

TEMPLAR, Senior District Judge.

The appellant-defendant, Louis Rex Curtis, was charged in a four-count indictment with violation of Section 1341, Title 18, United States Code, which prohibits the devising or intending to devise any scheme or artifice to defraud, or for obtaining money by fraudulent representations and using the mails to execute the scheme.

In substance, appellant was charged with devising a scheme to defraud and to obtain money from persons looking for dates or marriages by inducing them to use facilities of the "Computer Matching Institute" and to pay substantial fees for computerized and psychologically tested matching without having the intent and capability of performance. Appellant is charged in each count with knowingly making false representations to obtain money. He represented that computers would be used by the Institute through testing by a qualified psychologist and that he could match characteristics and preferences of those similarly processed and tested who would likely prove compatible and willing companions or marriage partners. He represented that the program had been endorsed by prominent religious leaders and other famous people and that he would and did do business as Computer Matching Institute, which he would and did operate and control. Appellant placed advertisements in various newspapers in Oklahoma, Kansas, Arkansas and Missouri, to solicit business and directed in such advertisements that inquiries should be mailed to him at Oklahoma City. Compatibility Questionnaires were sent out to those who responded to the advertisements and checks were sent to him through the mail in response to the false representations made by him in the solicitation by advertising.

It was further alleged that at the time of making such representations and the mailings in question, appellant did not have the intent or capability of processing or matching applications by computer or testing applicants through the services of a psychologist, that no famous people had endorsed his program, and that any processing or matching to the extent computed and reported at all was accomplished by hand by clerical help untrained for the purpose, or by the appellant himself.

To the charges alleged, appellant entered a plea of not guilty. At a jury trial, he was found guilty on all four counts; this appeal followed.

The principal contention of appellant on this appeal is that the trial court erred in overruling his motion to suppress all evidence derived from any investigation of the Computer Matching Institute made by the Oklahoma Department of Consumer Affairs. Appellant also claimed error by the trial court in failing to grant his motion for dismissal prior to trial, his motion for judgment of acquittal during trial, his motion for a new trial and for judgment of acquittal subsequent to trial because no violation of the statute was alleged or shown during the trial.

### THE MOTION TO SUPPRESS EVIDENCE

Appellant insists that there was introduced in evidence certain information identified and obtained by agents of the Oklahoma Department of Consumer Affairs.

◼ The Oklahoma Uniform Consumer Credit Code, Title 14A, Article 1 (§ 1–101, et seq.), was enacted to simplify, clarify and modernize the law governing retail installment sales, consumer credit, small loans and usury, and to protect consumer buyers against unfair practices by some suppliers of consumer credit. 14A, O.S.A. § 1–102.

It is clear that in selling the matching service to various purchasers, in most instances, a contract was entered into which provided for a down payment with the balance to be paid in installments or in a lump sum within a specified time.

The Oklahoma Statute also provided that the Administrator of the Department "for the purpose of discovering violations of the Act or of securing information required hereunder" was authorized to investigate the books, accounts, papers, correspondence and records of any licensee or other person whom the Administrator had reasonable cause to believe is violating any provision of the Act, "whether or not such person shall claim to be within the authority or scope of this Part." 14A, O.S.A. § 3–506(2).

Several complaints came to the Administrator of Consumer Affairs from persons who had made contracts with the Computer Matching Institute. Pursuant to the provisions of the Act, and Administrative Investigation and Demand was directed by the Administrator of the Department. The investigation resulted in a finding by the Administrator that the Computer Matching Service was in violation of the Code and it was directed to commence making refunds to persons from whom payments had been taken under the Matching Contracts.

■ For the purpose of this investigation, it was not required that the Institute be a licensee of the Department as appellant Curtis contends, any person reasonably suspected of violating the provisions of the Act was subject to investigation by the Department.

While the record does not disclose any extended consideration of the appellant's motion to suppress evidence obtained by the Administrator, it does appear that agents went to the place of business of Computer Matching Institute and obtained permission and consent from Betty Powers, an officer of the Institute and the office manager of the corporation, to examine its books and records. Mrs. Powers directed a clerk in the office, one Betty Lee, to give up the records of the Institute to the investigators from the Consumer Affairs Department.

The trial court determined that since consent to inspect, examine and copy had been given by the person in charge of the books and records of the Institute, no constitutional right of the appellant was violated.

■ It was not required that the agents who conducted the examination of the Institute's records advise the persons in charge of that business that they did not have to consent to a search of the Institute's books and records without a warrant. See *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854; *United States v. Mallory,* 460 F.2d 243 (10th Cir.); *United States v. Thriftimart,* 429 F.2d 1006, 1010 (9th Cir.). There is no evidence of coercion by the agents and the determination by the trial court that the consent was freely given without submission to authority must be sustained.

■ There is another reason the examination and inspection of the books and records of the Computer Matching Institute violated no right of appellant. The uncontradicted evidence is that the Institute is a corporation. If so, appellant had no constitutional standing, either as an individual or as an officer of the corporation, to premise an objection. *United States v. White,* 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542; *Galbraith v. United States,* 387 F.2d 617 (10th Cir.). The papers and effects examined were not the private property of Curtis and were not in his possession in a purely personal capacity. Thus, none of his constitutional rights were violated.

The case of *Finn's Liquor Shop v. State Liquor Authority,* 24 N.Y.2d 647, 301 N.Y. S.2d 584, 249 N.E.2d 440, is inapposite. There, an agent of the State Liquor Authority, while inspecting a licensed liquor store with the owner's consent, found in a coat an article not used in the business and whose ownership was not known, in which sales slips showed illegal sales of liquor on credit. The right to inspection of the premises, it was held, did not extend to a right of search of items of personal property not used in conducting the business.

Nor does the case of *United States v. Anile,* 352 F.Supp. 14 (N.D.W.V.), support appellant's contention. There, a co-owner of a drug store, in possession of the premises, asked a narcotics agent when a search of premises was sought without a warrant, whether he had a choice to grant permis-

sion. The agent told him he had no choice and the search followed in which evidence of law violations were found. The court in that case simply ruled that the store owner's consent was not a valid consent. In the case at bar, no such misrepresentation occurred and the appellant was not in possession of the premises inspected, nor was he the owner of them.

## SUFFICIENCY OF THE INDICTMENT AND THE EVIDENCE TO SUPPORT CONVICTION

■ The federal statute prohibits the use of the mails in the actual or attempted execution of the scheme to defraud. The required elements for establishing the substantive mail fraud counts are: (1) the act of having devised or intending to devise a scheme or artifice to defraud or attempt to defraud, and (2) the act of using the mails

willfully, with intent to carry out some essential step in the execution of the scheme or artifice to defraud.

■ The success or failure of the scheme is immaterial; it is not necessary to show that any person was in fact defrauded. The use of the mails, in furtherance of the scheme, is an essential element of the crime charged, but it is not necessary that the item mailed show on its face that it was mailed in furtherance of the scheme, or that the participants in the fraud specifically intended that the mails be used. It is sufficient if the mails were in fact used to carry out the scheme and if the use of the mails by a participant or another was reasonably foreseeable.

■ An examination of the indictment discloses that it contains in considerable detail the acts alleged to support the charge under the statute.[1] In fact, the appellant

---

1. **"COUNT 1**

"That from on or about the 14th day of August 1972, and continuing thereafter up to on or about the 6th day of September, 1973, at Oklahoma City, Oklahoma County, and Enid, Garfield County, both within the Western Judicial District of Oklahoma; at Ada, Pontotoc County, Eastern Judicial District of Oklahoma; in the Districts of Kansas, Western Arkansas and the State of Missouri; and at other places to the grand jurors unknown.

LOUIS REX CURTIS

devised and intended to devise a scheme and artifice to defraud and to obtain money from persons looking for dates or marriages by inducing them in the name of "Computer Matching Institute" to pay substantial fees for computerized and psychologically tested matching, without the intent and capability of performance on his part. The scheme and artifice as devised by Louis Rex Curtis was also to obtain money by means of the following false and fraudulent pretenses, representations and promises, well knowing at the time that the pretenses, representations and promises would be false when made in substance as follows: That by the use of computers arranged for and used by the Computer Matching Institute, a successful and effective organization, and through testing by qualified psychologists, he could and would match by prompt computer processing and expert psychological testing the personal characteristics and performances of those willing to pay the required fees with other persons similarly processed and tested and likely to prove compatible and willing companions or marriage partners; that references

of such matched persons would be promptly made and communicated to the subscribers for their selection or rejection; and that this program had been endorsed by Dr. Joyce Brothers, Dr. Billy Graham, Dr. Norman Vicent Peale, Dr. Crane, and other famous people. The true facts were that the "Computer Matching Institute" at the material times and places was largely a facade and pretense to permit the collection of large sums of money from the public; that Louis Rex Curtis, at the time of devising such scheme or artifice to defraud, and making such pretenses, representations and promises, and at the time of the mailings in question, did not have the intent or capability of processing or matching applications by computer or testing applicants through the services of a psychologist; that no famous people had endorsed his program, and that any processing and matching to the extent completed and reported at all, unknown to the subscribers, were accomplished by hand by clerical help untrained for the purpose or by Louis Rex Curtis himself.

"1. It was a further part of such scheme and artifice to defraud, that Louis Rex Curtis would and did do business as Computer Matching Institute, which he would and did operate and control.

"2. It was a further part of said scheme and artifice to defraud that Louis Rex Curtis would and did receive through the United States Mails certain checks sent by various persons in Arkansas, Kansas and Oklahoma, said checks being sent in response to inducements for payments on the alleged computer matching service and as payments in advance for said services.

sought to have some of the allegations contained in the indictment stricken as surplusage. This effort was denied by the trial court. In view of the fact that an earlier conviction of appellant had been reversed by this Court (*United States v. Curtis,* 506 F.2d 985) and the indictment ordered dismissed for the specific reason that it pled little more than the statutory language without any fair indication of the nature or character of the scheme or artifice relied upon, or the false pretenses, representations or promises forming a part of it, the indictment now before us supplied that deficiency. Considering the substantial evidence in the record offered in support of the charges contained in the indictment, no prejudice to appellant may be found in the contents of the indictment.

▆ Appellant challenges the sufficiency of the evidence to sustain the convictions. It is axiomatic that the evidence, whether direct or circumstantial, including reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the prosecution, and the verdict will be upheld if there is evidence to support it.

It was shown by an abundance of evidence that appellant was connected with a business which was named "Computer Matching Institute." It was first located in Oklahoma City, Oklahoma, and was operated by the appellant and those employed by him. Newspaper advertisements were placed in newspapers inviting single persons seeking to be matched by computer with one of the opposite sex to contact the Institute by mail or telephone. A person responding to the advertisement would be supplied with material which would be followed in most instances by personal calls from appellant or his agent in which the prospective customer would be assured that by the use of computer testing, conducted by trained psychologists, she or he would be perfectly matched with a mate or companion. Charges for the service was generally $295.00, though higher charges were sometimes made, usually with a down payment and terms as the testing proceeded. Representations were made that a number of famous and nationally known persons had endorsed the program, including Dr. Norman Vincent Peale, Dr. Billy Graham, Dr. Brothers, and others.

The Computer Matching Institute was represented to be a successful and effective service which, together with the expert psychological testing of personal characteristics and preferences of other persons, would provide references of matched persons likely to prove compatible and willing companions or marriage partners.

When appellant was required to cease his operations in Oklahoma by the Oklahoma

"3. It was a further part of said scheme and artifice to defraud that Louis Rex Curtis would and did prepare and caused to be placed advertisements in various newspapers in Oklahoma, Arkansas, Kansas and Missouri to solicit business for the said alleged computer matching service, directing in said advertisements Post Office addresses in Oklahoma City, Oklahoma in which inquiries could be sent in response thereto through the United States Mails; and to send out Compatibility Questionnaires to those induced by said advertisements to respond.

"4. And it was a further part of said scheme and artifice that Louis Rex Curtis would and did cause to be mailed letters at Ft. Smith, Arkansas in February and August, 1973, with a return address in Oklahoma City, Oklahoma, containing misrepresentations about the computer services, management, Investigating Department, and alleged invoices for computer services work, for the purpose of lulling or soothing the complaints of persons who had paid for services not provided by Computer Matching Institute.

"5. On or about November 28, 1972, at Oklahoma City Oklahoma County, Western Judicial District of Oklahoma, Louis Rex Curtis, for the purpose of executing the aforesaid scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises willfully and knowingly did cause to be deposited in an authorized mail depository, to be sent and delivered by the Postal Service of the United States, mail matter containing a document labeled and purported to be a 'Compatibility Questionnaire for Dating and Marriage', to be used in connection with the alleged computer matching service, addressed to Theda Fairchild, 1610 S. Edith, Chanute, Kansas, 66720; all in violation of Section 1341, Title 18, United States Code."

Department of Consumer Affairs because of the violations of the Oklahoma Uniform Credit Code, he removed his operations to Ft. Smith, Arkansas, but continued to carry on the business and collections of accounts from that place. In order to add some credence to his representations, the appellant had some tests made of programs alleged to be developed by the Institute. The tests took about one-half hour to complete. No other tests were made.

There is substantial evidence in the record to establish the elements of the offenses charged. At the time appellant devised the matching service scheme, neither he nor the Institute had facilities to provide computer processing of the matching characteristics and preferences of those who sought out such services in response to his representations. No psychologist, trained or otherwise, ever tested or examined the information supplied in questionnaires submitted by the customers. There had been no approval or endorsement of the program by the famous persons named when the sales pitch was made. Whatever matching of compatible companions or marriage partners was done by appellant or by untrained clerks in the office of the Institute, without the use of computers or psychologists, and substantial sums of money was collected from those who responded to the advertisements and representations made to them.

Appellant insists that the element of intent to commit the crime charged is not sufficiently proved.

This Court, in the case of *United States v. Seasholtz,* 435 F.2d 4, 8, describes the rules to be applied in cases such as this. There, the Court held:

"The basic elements of a violation of the Mail Fraud Statutes are (1) a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States Mails to further the scheme. (Citations omitted.) We have said that a scheme to defraud under the statute is one in which it is 'reasonably calculated to deceive persons of ordinary prudence and comprehension.' (Citation omitted.)

Willful intent may be inferred from the statements and activities of the parties to the scheme. (Citations omitted.) In *Crosby v. United States,* 183 F.2d 373, 375 (10th Cir. 1950), cert. denied, 340 U.S. 906, 71 S.Ct. 274, 95 L.Ed. 656, this court said:

'* * * Fraudulent intent is in many instances not susceptible of proof by direct evidence. In numerous cases it must be inferred from a series of acts and pertinent circumstances. (Citations omitted) One will not be heard to say that he did not intend the natural consequences of his conduct. "If a man intentionally adopts certain conduct in certain circumstances known to him, and that conduct is forbidden by the law under those circumstances, he intentionally breaks the law in the only sense in which the law ever considers intent." (Citations omitted)'

"In determining the sufficiency of the evidence in a criminal case, appellate courts appraise the evidence, both direct and circumstantial, in the light most favorable to the prosecution, together with the reasonable inferences to be drawn therefrom, and will not weigh the evidence or test the credibility of the witness. *Havelock v. United States,* 427 F.2d 987 (10th Cir. 1970) (Citations omitted.)"

The question of good faith, success of the venture, and fraud is for the jury. Intent may be inferred from conduct and circumstantial evidence, upon which reasonable inferences may be based. *Wall v. United States,* 384 F.2d 758 (10th Cir.). Again, fraudulent representations may be effected by deceitful statements or half-truths or the concealment of material facts. *Williams v. United States,* 368 F.2d 972 (10th Cir.).

We are satisfied that the evidence in the record before us is ample to present a jury question. We must find and determine that the evidence and the inferences and deductions reasonably to be drawn from it, viewed in the light most favorable to the prosecution, amply sustains the verdicts of guilty and the appellant's conviction of the

charges contained in the four counts of the indictment. The trial court did not err in overruling the motions of appellant to dismiss, his motion for directed verdict of acquittal, his motion for judgment of acquittal notwithstanding the verdict or in the alternative for a new trial.

AFFIRMED.