UNITED STATES of America,
Plaintiff–Appellee,

v.

James Leon STEWART,
Defendant–Appellant.

Robert Preston Fails, Defendant.

No. 88–1183.

United States Court of Appeals,
Tenth Circuit.

April 24, 1989.

Linda G. Alexander of Niemeyer, Noland & Alexander (John C. Niemeyer and Kenneth D. Upton, Jr., of Niemeyer, Noland & Alexander, with her on the briefs), Oklahoma City, Okl., for defendant-appellant.

H. Lee Schmidt, Asst. U.S. Atty. (William S. Price, U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before McKAY and McWILLIAMS, Circuit Judges, and BROWN,* Senior District Judge.

WESLEY E. BROWN, Senior District Judge.

Appellant James Stewart was convicted by a jury on twenty-nine counts of mail and wire fraud (18 U.S.C. § 1341 and § 1343) as well as one count of conspiracy to defraud (18 U.S.C. § 371). Appellant argues that the trial court committed several errors in the proceedings below. We have examined the record and, having found no error, we affirm the judgment and the convictions.

According to the superseding indictment, the defendant devised a scheme to obtain pharmaceuticals from drug manufacturers at reduced prices by representing that the drugs were being purchased for use in hospitals, when in fact the defendant intended to sell the drugs to various wholesalers. The indictment alleged that the scheme developed as follows: Prior to 1984, Hospital Shared Services, Inc., ("HSSI") was a nonprofit buying group, consisting of a number of hospitals in Oklahoma. HSSI was basically a conduit through which member hospitals ordered and obtained pharmaceuticals from manufacturers. In accordance with industry practice, pharmaceutical manufacturers sold their products to hospitals or their buying groups (such as HSSI) at prices well below the normal price on products sold to wholesalers. The indictment further alleged that the manufacturers would only sell to buying groups at these reduced, or "bid," prices upon a representation that the pharmaceuticals were being obtained for the "own use" of members of the buying group and not for resale to nonmember institutions.

In 1984, the defendant Stewart and his codefendant Robert Fails gained control of HSSI. The defendants then sent letters to several manufacturers, stating that HSSI was a nonprofit shared services group representing thirty-one hospitals. The defendants later represented that pharmaceuticals purchased from the manufacturers were for the "own use" of HSSI's member hospitals. According to the indictment, this was part of the defendants' scheme to defraud the manufacturers by obtaining pharmaceutical products at substantially reduced prices. The defendant ordered quantities of pharmaceuticals far in excess of what was needed by HSSI's member institutions and then sold the surplus pharmaceuticals to wholesale drug companies.

* The Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

Appellant's first argument is that the mail and wire fraud statutes are unconstitutionally vague. Such a challenge must be examined in light of the facts of the case at hand. *United States v. Mazurie*, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). After examining the record before us, we must reject the claim that these statutes are impermissibly vague.

The mail fraud statute [1] provides in part: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,.... for the purpose of executing such scheme or artifice or attempting so to do [uses the mails or causes them to be used], shall be fined not more than $1,000 or imprisoned not more than five years, or both.

(18 U.S.C. § 1341).

The statute clearly prohibits the use of the mails to further any scheme or artifice to defraud. A scheme or artifice to defraud "connotes a plan or pattern of conduct which is intended or is reasonably calculated to deceive persons of ordinary prudence and comprehension." *United States v. Taylor*, 832 F.2d 1187, 1192 (10th Cir.1987).

■ The test for impermissible vagueness is whether a person of ordinary intelligence is given fair notice by the statute that his conduct is forbidden. *Palmer v. City of Euclid*, 402 U.S. 544, 91 S.Ct. 1563, 29 L.Ed.2d 98 (1971); *United States v. Stoddart*, 574 F.2d 1050, 1053 (10th Cir. 1978). We find that a person of ordinary intelligence would have understood that a plan to obtain pharmaceuticals at reduced prices by intentionally misrepresenting the nature and intent of the purchaser constituted a scheme to defraud or to obtain money or property by means of false representations, such as is prohibited by 18 U.S. C. § 1341. It is significant in this regard to note that mail fraud is a specific intent crime. The Supreme Court has long recognized that the constitutionality of a vague statutory standard is closely related to

whether that standard incorporates a requirement of *mens rea*. *Colautti v. Franklin*, 439 U.S. 379, 395, 99 S.Ct. 675, 685, 58 L.Ed.2d 596, 609 (1978). Although a specific intent requirement does not necessarily validate a criminal statute against all vagueness challenges, it does eliminate the objection that the statute punishes the accused for an offense of which he was unaware. *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). *See also United States v. Conner*, 752 F.2d 566 (11th Cir.1985), *cert. denied*, 474 U.S. 821, 106 S.Ct. 72, 88 L.Ed.2d 59.

■ Appellant's next contention is that the indictment should have been dismissed for failure to allege a criminal offense. The indictment clearly alleged that the defendant devised a scheme to obtain money or property from his intended victim by means of false pretenses, representations or promises, and that he used the U.S. mails for the purpose of executing or furthering the scheme. These and the other allegations in the indictment are sufficient to state an offense under § 1341. *See United States v. Murphy*, 836 F.2d 248, 254 (6th Cir.1988) ("The predicate for a mail fraud violation is a 'scheme or artifice' to defraud a person or entity of its money or property."). Thus, the trial court properly refused to dismiss the indictment.

Appellant next argues that the trial court erred by failing to give several of his requested instructions. Relying on *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), appellant first contends that he was prejudiced by the trial court's refusal to instruct the jury that the mail and wire fraud statutes did not apply to certain intangible rights. Appellant contends that, at most, the manufacturers named in the indictment were deprived only of an "intangible business expectation."

In *McNally*, the Supreme Court ruled that § 1341 did not reach schemes to defraud citizens of their intangible right to

---

1. For the sake of simplicity, we discuss appellant's claim only as it relates to the mail fraud statute. Our analysis is equally applicable, however, to the nearly identical wire fraud statute, 18 U.S.C. § 1343.

honest government. Instead, the Court held that § 1341 was limited in scope to the protection of property rights. *Id.*[2]

■ We find that the present case clearly involved a scheme relating to property rights and is in accord with the rule announced in *McNally*. The object of the defendant's scheme in this case was to obtain low-priced pharmaceuticals from the manufacturers by means of false representations. *Cf. Carpenter v. United States,* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). ("Here, the object of the scheme was to take.... confidential business information....") Stated otherwise, the effect of the scheme was to deprive the manufacturers of money which they should have received on sales of pharmaceuticals to wholesalers. The government presented extensive testimony establishing that the manufacturers would not have sold the drugs to HSSI at reduced prices if the true facts had been known and that the prices charged to HSSI would have been much higher but for the defendant's scheme. Such a scheme, where the accused intends to gain money or property at the expense of the victim of the scheme, is clearly within the purview of § 1341. *Carpenter v. United States, supra; United States v. Shelton,* 848 F.2d 1485 (10th Cir.1988).

A reading of the indictment in this case shows that the defendant was charged with devising a scheme "to defraud and obtain property from the pharmaceutical companies named in.... this indictment.... by means of false and fraudulent pretenses...." This was the only scheme alleged in the indictment and was incorporated into each count against the defendant. The indictment contained no allegation that any person or entity was deprived of an intangible right, nor was any evidence presented to that effect. In accordance with the indictment, the trial court instruct-

ed the jury that "the fraudulent scheme alleged in the present case is the purchase of pharmaceuticals-medical supplies at non-profit or 'bid' prices." Thus, the only theory presented to the jury was that the manufacturers were deprived of money or property by the defendant's scheme. Having reviewed the indictment, the evidence, and the instructions to the jury, we conclude that there was no possibility that the jury convicted the defendant without a finding that his scheme was intended to deprive the manufacturers of money or property. *United States v. Lance,* 848 F.2d 1497, 1501 (10th Cir.1988). *See also United States v. Diwan,* 864 F.2d 715, 719 (11th Cir.1989); *United States v. Folak,* 865 F.2d 110, 113 (7th Cir.1988); *United States v. Wellman,* 830 F.2d 1453, 1462–63 (7th Cir. 1987) ("the proof in this case removes any doubt regarding the nature of the scheme."). The defendant was therefore not prejudiced by the trial court's instructions on the scheme to defraud.

■ Appellant also contends the trial court erred by refusing to instruct the jury on the elements of common law fraud. It is well established, however, that an offense under § 1341, unlike common law fraud, does not require the successful completion of the scheme to defraud. *United States v. Curtis,* 537 F.2d 1091, 1095 (10th Cir.1976). (The success or failure of the scheme is immaterial under § 1341.) *See also* 18 U.S.C. § 1341 ("Whoever, *having devised or intending to devise* any scheme or artifice to defraud.... for the purpose of executing such scheme.... *or attempting* so to do [uses the mails] shall be fined....") It follows from this that the government does not have to prove actual reliance upon the defendant's misrepresentations nor do they have to prove that the victim suffered actual pecuniary losses from the scheme. *United States v. King,* 860 F.2d 55 (2nd Cir.1988) (The actual

---

**2.** We note that Congress, in an apparent effort to overcome the *McNally* decision, has now stated that a scheme or artifice to defraud includes "a scheme or artifice to deprive another of the intangible right to honest service." (18 U.S.C.A. § 1346 (Supp.1989), (added Pub.L. 100–690, Title VII, § 7603(a), Nov. 18, 1988, 102 Stat. 4508). This statute was not enacted until November 18,

1988, and therefore does not apply to the criminal charges against the defendant in this case. For purposes of this appeal, we apply the law as set forth in *McNally* and its progeny. *See e.g., United States v. Asher,* 854 F.2d 1483, 1494 (3rd Cir.1988) (Under *McNally,* § 1341 does not apply to rights whose violation would lead to no economic harm).

showing of loss is not required; the statute prohibits schemes intended to deprive victims of money or property); *see also United States v. Dynalectric Company*, 859 F.2d 1559, 1576 (11th Cir.1988) *petition for cert. denied*, —— U.S. ——, 109 S.Ct. 1641, 1642, 104 L.Ed.2d 157 (1989) and *United States v. Aigbevbolle*, 827 F.2d 664, 666 (10th Cir.1987) (distinguishing between completion of the offense under § 1341 and successful completion of the scheme to defraud). The trial court therefore properly refused the defendant's requested instructions on these issues.

■ Appellant likewise objects to the failure of the trial court to instruct the jury on certain provisions of the antitrust laws, including the Robinson–Patman Act. Although appellant's argument is somewhat convoluted, it centers on the proposition that the manufacturers were not defrauded because HSSI was entitled as a matter of law to obtain pharmaceuticals at the same reduced prices as were offered to hospitals. The defendant argues that HSSI was entitled to these reduced prices because both HSSI and hospitals were exempt institutions within the meaning of the Nonprofit Institutions Act. That Act provides an exemption from the price discrimination provisions of the antitrust laws for "purchases of their supplies for their own use by.... hospitals, and charitable institutions not operated for profit." 15 U.S.C. § 13c. Leaving aside the defendant's assertion that HSSI was operating as a charitable institution within the meaning of the Act, it is clear that the large scale sale of pharmaceuticals at a profit to wholesalers in the private market is not for the "own use" of a hospital buying group. *See De Modena v. Kaiser Foundation Health Plan, Inc.*, 743 F.2d 1388, 1392–94 (9th Cir.1984) (Drugs purchased by HMO's for resale to its members are for the HMO's "own use"; purchases for resale to nonmembers do not qualify as "own use".) *See also Abbott Laboratories v. Portland Retail Druggists Association*, 425 U.S. 1, 96 S.Ct. 1305, 47 L.Ed.2d 537 (1976). HSSI was not entitled to obtain reduced prices on the purchases at issue in this case and the trial court did

not err in refusing the requested instructions.

■ The defendant next challenges the sufficiency of the evidence, contending that no false representations were made to the pharmaceutical manufacturers. For example, the defendant argues that the letters that were sent to several manufacturers, which stated that HSSI was a nonprofit buying group representing thirty-one hospitals, were factually correct. Although HSSI did in fact represent these hospitals, the circumstances surrounding the execution of the letters were sufficient for the jury to find that the letters were part of a plan to deceive the manufacturers. The letters were at best a "half-truth," since HSSI sought prices applicable on sales of drugs to hospitals but intended to make purchases for wholesalers rather than the hospitals. *See United States v. Curtis*, 537 F.2d 1091 (10th Cir.1976) (Fraudulent representations may be affected by deceitful statements or half-truths or the concealment of material facts). Additionally, the defendants sent letters to the manufacturers indicating that the pharmaceuticals were for the "own use" of HSSI's member hospitals. The jury also heard evidence that the defendants attempted to erase records of where the pharmaceuticals were actually going; that the defendants attempted to place an order for pharmaceuticals in the name of a hospital that had not ordered them; and that the defendant Stewart used an alias in some of the transactions involved in the case. This and other evidence in the record before us, viewed in the light most favorable to the government, amply supports the verdicts of guilty.

■ The next issue raised by appellant concerns a temporary restraining order and a subsequent protective order issued by the district court. This issue requires a somewhat detailed review of the facts. In March of 1987, federal agents executed a search warrant on the defendant's property. In May, 1987, the defendants filed a civil suit in Oklahoma County, Oklahoma, naming two of the drug manufacturers involved in this case and several individuals

as defendants. In August of 1987, the defendant Stewart was indicted by a federal grand jury on the mail and wire fraud charges that form the basis of the present case. The criminal case was scheduled for trial on November 2, 1987.

Shortly before the criminal trial was to begin, the U.S. Attorney moved for a temporary restraining order under 18 U.S.C. § 1514. That statute requires a U.S. District Court to issue a temporary restraining order prohibiting the harassment of a witness in a federal criminal case if the court finds there are reasonable grounds to believe such harassment exists. 18 U.S.C. § 1514(a)(1). The U.S. Attorney sought an order preventing the defendant or his attorneys from taking the depositions of government witnesses and from undertaking any course of conduct to harass any of the government's witnesses. The government alleged that the defendant was harassing witnesses and was using the civil case to avoid restrictions on criminal discovery. In a supporting affidavit, the government alleged that after one of the government's witnesses (a former employee of the defendant) refused to discuss the criminal case with the defendant's attorneys, the witness was contacted by the attorneys at her home and office on at least five occasions. On each occasion, the defense attorney requested an interview in regard to the criminal case and the witness refused. The defendant then served the witness with a notice that her deposition in the pending civil case was to be taken on October 23, 1987, approximately one week before the defendant's criminal trial was scheduled to begin. The witness reported to the U.S. Attorney that she felt harassed by the repeated contacts from the defendant's attorneys and by the setting of her deposition prior to the criminal trial. Based on these and other facts set forth in the affidavit, the district court issued a temporary restraining order on October 22, 1987, ordering the defendant and his attorneys to refrain from deposing any government witness and to refrain from harassing any government witness. The matter was set for a hearing on October 26, 1987, after which the court dissolved the TRO and

issued a protective order. The protective order directed the defendant to cease taking discovery in the civil case until the criminal trial was completed.

The defendant's primary contention with regard to the TRO is that the order to refrain from "harassing any government witness" was so broad that it interfered with the defendant's right of access to potential witnesses. The defendant argues that § 1514 requires greater specificity as to the acts being restrained by the court. (See 18 U.S.C. § 1514(a)(2)(F)). We do not find it necessary to address the issue of whether the trial court's failure to be more specific constituted error because we find that, if any error was committed by the trial court, it was harmless beyond a reasonable doubt. The TRO was only in effect from October 22 to October 26, 1987, a total of four days. On October 26, 1987, the court dissolved the TRO and issued the protective order, which simply directed the defendant to cease taking discovery in the civil case. In an order dated October 27, 1987, the trial court stated: "The court wants to make clear that the protective order does not in any way limit the defendant's right to attempt to interview any witness in a criminal case." Even assuming that the TRO could somehow be interpreted as prohibiting *any* attempt at interviewing witnesses, as the defendant suggests, the defendant had ample time after the TRO was dissolved to contact any potential witnesses. The trial did not begin until November 9, 1987, nearly two weeks after the TRO was dissolved. The defendant does not even suggest that some witness was willing to discuss the case with him but was unable to because of the TRO. Given these circumstances, the defendant has failed to demonstrate any prejudice arising from the TRO.

The defendant also contends that the trial court was without power to issue the protective order staying discovery in the civil case. While we need not decide this issue, we note that in appropriate circumstances, the district court has authority under Rule 16(d) to prevent the parties from abusing discovery procedures, includ-

ing attempts to avoid the limitations on criminal discovery through the use of civil discovery provisions. *See e.g., Securities & Exchange Commission v. Dresser Industries,* 628 F.2d 1368, 1373 (D.C.Cir. 1980); *Campbell v. Eastland,* 307 F.2d 478 (5th Cir.1962) *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963). *See also United States v. Tison,* 780 F.2d 1569 (11th Cir.1986). It is sufficient for our purposes, however, to state that the protective order did not affect the rights of the defendant in this criminal action.

We have examined appellant's remaining arguments and find them to be without merit.

The judgment and convictions are AFFIRMED.