UNITED STATES of America, Plaintiff–Appellee,

v.

Billy Fred HILLGARTNER, Defendant–Appellant.

No. 01–2133.

United States Court of Appeals, Tenth Circuit.

June 13, 2002.

---

Before TACHA, Chief Circuit Judge, McWILLIAMS, Senior Circuit Judge, and RUSSELL, Chief District Judge.*

## ORDER AND JUDGMENT **

McWILLIAMS, Senior Circuit Judge.

In Count 1 of a three-count indictment, Billy Fred Hillgartner ("Hillgartner") was charged with causing to be transmitted a wire communication in inter-state and foreign commerce for the purpose of carrying out a scheme to defraud whereby the Office of Justice Programs, Washington, D.C., on December 10, 1997, transferred $57,131.00 to a checking account under Hillgartner's sole control in the First National Bank of Farmington, Farmington, New Mexico, in violation of 18 U.S.C. § 1343. In Count 2, Hillgartner was charged in like fashion with causing a similar transfer of funds in the amount of $45,746.00 on February 26, 1998, from the Office of Justice Programs Washington, D.C., to his checking account in the First National Bank of Farmington in violation of 18 U.S.C. § 1343. In Count 3, Hillgartner was charged in the same fashion with attempting to cause a transfer on April 15, 1998, of $47,123.00 from the Office of Justice Programs, Washington, D.C., to his checking account in the First National Bank of Farmington in violation of 18 U.S.C. § 1343.

---

* Honorable David L. Russell, Chief District Judge of the Western District of Oklahoma, sitting by designation.

** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Hillgartner pled not guilty to all three counts. On November 21, 2000, a jury sitting in the United States District Court for the District of New Mexico, after a three-day trial, convicted Hillgartner on all three counts. At sentencing, the district court increased Hillgartner's base offense level by two levels for more-than-minimal planning (U.S.S.G. § 2F1.1(b)(2)), and by two more levels for obstruction of justice (U.S.S.G. § 3C1.1(A)). Such increases resulted in an adjusted base offense level of 19, which, when coupled with Hillgartner's criminal history of Category I, resulted in a sentencing guideline range of 30 to 37 months imprisonment. Based thereon, the district court sentenced Hillgartner to imprisonment for 30 months. Hillgartner appeals his several convictions and the sentences imposed thereon.

On appeal, counsel raises the following issues: (1) 18 U.S.C. § 1343 is "unconstitutionally vague," if not on its face, as applied to the facts of the instant case; (2) insufficient evidence to show that Hillgartner had a specific intent to defraud or any scheme to defraud; and (3) error at sentencing when the district court increased Hillgartner's base offense level by two for more-than-minimal planning and also increased Hillgartner's base offense level by two levels for obstruction of justice. Finding no reversible error, we affirm.

Before considering the various grounds asserted in this Court by counsel for reversal, a more detailed reference to the indictment may be helpful. Under the heading of "Introduction," we learn from the indictment that the Town of Navajo, New Mexico, is a part of the Navajo Nation and is located in the State of New Mexico. According to the indictment, the Navajo Nation Department of Law Enforcement ("NNDLE") oversees all policing activity throughout the Navajo Nation, including the Town of Navajo, New Mexi-

co, and that Hillgartner is a captain in the NNDLE. The Office of Community Oriented Policing Services ("COPS"), an agency of the United States Department of Justice, has as its goal, *inter alia*, increasing the number of police officers on America's streets, the promotion of community policing, and seeks to aid law enforcement agencies and improve safety levels in communities throughout the country. In furtherance of said goals, COPS established a community policing grant program called Problem Solving Partnerships, under which any state, local or Indian Tribal law enforcement agency may apply for a grant. On or about August 15, 1996, Hillgartner submitted a grant application to COPS, listing the Town of Navajo and NNDLE as partners and co-grantees. In the grant application that Hillgartner prepared and submitted he stated that any grant funds received by the Town of Navajo and NNDLE would be used to establish a program called "Crime Busters" and focused on "the problem of residential burglaries in the Town of Navajo." On or about September 26, 1997, COPS awarded a grant of $150,000.00 to NNLDE and the Town of Navajo.

In the indictment, under the heading of "The Scheme and Artifice to Defraud," it was alleged that a part of the scheme was that Hillgartner "would and did divert and cause to be diverted proceeds of the COPS grant from the Navajo Nation General Fund Account to a different bank account under his sole and exclusive control." In furtherance thereof, according to the indictment, Hillgartner opened a checking account at the First National Bank of Farmington, Farmington, New Mexico, for the purpose of receiving all proceeds of the COPS grant and falsely represented to the bank that he was authorized to conduct all activities associated with the COPS grant, including the distribution of all grant monies. We also learn from the indictment

that Hillgartner provided a wire transfer routing transit number for the First National Bank of Farmington to the Office of Justice Programs, the federal agency responsible for transferring COPS' grant monies. As a part of his scheme, Hillgartner hired his wife as a full time employee of Crime Busters and his 16 year old daughter as an Entry Clerk and did disburse grant proceeds to his wife and daughter, although both had "done little or no work to earn such grant proceeds."

I. Vagueness

█ On appeal, counsel argues that 18 U.S.C. § 1343, the statute upon which all three counts in the indictment are based, is "vague" and therefore in violation of the "due process" clause of the Fifth Amendment of the United States Constitution. This issue was not raised in the district court, either by pre-trial or post-trial motion. Such being the case, on appeal, we review only for "plain error." *United States v. Walker*, 137 F.3d 1217, 1219 (10th Cir.1998).

The test for impermissible vagueness is whether a person of ordinary intelligence is given fair notice by the statute that his conduct is forbidden. *United States v. Stewart*, 872 F.2d 957, 959 (10th Cir.1989). In *Stewart*, we also held that 18 U.S.C. § 1343, the wire fraud statute, and 18 U.S.C. § 1341, the mail fraud statute, were not unconstitutionally vague.

In his reply brief, counsel states that he is not challenging 18 U.S.C. § 1343 on the grounds that it is facially vague, but rather, it is his position that "the statute is vague as applied to the facts of this case." In this latter regard, see *United States v. Protex Industries, Inc.*, 874 F.2d 740, 743 (10th Cir.1989). Whether this statute is "vague" as applied to the present facts necessarily involves a consideration of the evidence adduced at trial. We shall discuss the evidence before the district court and the jury in some detail in the next section of the Order and Judgment. For present purposes, it is sufficient to state that we see no "vagueness" in the statute when applied to the facts of the present case.

II. Sufficiency of Evidence

█ Hillgartner next argues that the government failed to present sufficient evidence to prove that he had a "specific intent to defraud" or that he had any "scheme or artifice to defraud." In this connection, it was the government's theory of the case that rather than using the grant for its intended purpose of combating crime in the Town of Navajo, Hillgartner secretly set up a bank account under his sole control and caused $102,877.00 of the grant to be transferred by wire to his account, which monies were thereafter used for himself and his family. As to the third, and last, installment of some $47,123.00, when Hillgartner attempted to have that sum sent to his account, a COPS clerical correction directed that particular transfer to the Navajo Nation account, all of which precipitated an investigation into the entire matter, resulting, *inter alia*, in a cancellation of the grant.

It was Hillgartner's theory of the case that, though he had, perhaps, shown bad judgment, he was not guilty of any criminal conduct. Counsel claims that Hillgartner could not reasonably have been expected to know of all the "rules and regulations" of COPS, and that he did not have "reasonable notice" that any "bureaucratic ineptitude or poor management [on his part] resulting in delay in executing a grant project is punishable as wire fraud."

As previously stated, there was a rather protracted jury trial at which numerous witnesses were called. Hillgartner elected

to testify on his own behalf, and was examined and cross-examined at length. We see no need to summarize the evidentiary matter before the jury. We would, however, make brief comment on one important bit of evidence. As previously indicated, Hillgartner attempted to open a bank account in the First National Bank of Farmington over which he would have sole control, and have the monies from the COPS grant deposited in that account by wire transfer. However, bank officers declined to do so, and requested him to provide a letter from the Navajo Nation authorizing him to have such control and authority to receive, and disburse, COPS monies through that account. The evidence is that the next day Hillgartner reappeared at the bank with a letter purporting to grant him "such authority" over the funds thus received, and based on that letter, the bank granted Hillgartner's request. The letter was signed by one Leonard Butler as the Chief of NNDLE. Chief Butler testified as a government witness and stated that he had not written the letter, nor seen the letter and that the signature thereon was not his signature, indicating that the letter presented by Hillgartner to the bank was a forgery. Such, in our view, would tend to permeate the entire deal with COPS, i.e., the grant application, wherein arguably some misrepresentations were made, the loans and the two payments into the account in the First National Bank of Farmington, and the ultimate disposition by Hillgartner of the grant monies for personal and family use. In short, we believe the record is sufficient to show criminal intent and a scheme to defraud on the part of Hillgartner.

### III. Enhancement of Hillgartner's Base Offense Level

Hillgartner's final argument on appeal is that the district court erred in increasing his base offense level by two for more-than-minimal planning and then increasing it two more levels for obstructing justice. We review a district court's application of the Sentencing Guidelines *de novo,* and a district court's factual findings for clear error, "giving due deference to the district court's application of the guidelines to the facts." *United States v. Vallo,* 238 F.3d 1242, 1250 (10th Cir.2001). On the basis of the record before it, we believe the district court's factual findings were not clearly erroneous, nor are we inclined to disturb the district court's application of the guidelines to those facts. Certainly, the "planning" of the scheme was not just minimal planning. The "planning" took place over the course of several months. The enhancement for obstructing justice was based on the district court's belief that Hillgartner had testified falsely concerning the letter of authority given the First National Bank of Farmington, as well as on some other matters. *United States v. Mounkes,* 204 F.3d 1024, 1029 (10th Cir. 2000).

Judgment affirmed.