**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 10, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MAURICIO MICHEL,

      Defendant-Appellant.

No. 04-2214

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-03-127 JC)**

---

Bernadette Sedillo of Las Cruces, New Mexico, for Defendant-Appellant.

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **O'BRIEN**, **SEYMOUR**, and **BALDOCK**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Mauricio Michel brings this appeal challenging, on sufficiency of the evidence grounds, his convictions for various gun possession and aiding and abetting charges pursuant to 18 U.S.C. §§ 2, 922(g)(1), 924(a)(2); 26 U.S.C. §§ 5841, 5845(a)(2), 5861(d), 5861(i), 5871. He also claims that his sentence should not have been enhanced under the Armed Career Criminal Act (ACCA). 18 U.S.C. § 924(e); *see also* U.S.S.G. § 4B1.4. We affirm in part, reverse in part, and remand for resentencing.

## I

On December 31, 2001, an officer for the Lovington, New Mexico, police department observed Clinton Laughrin at a convenience store putting gasoline in a gas can. The officer, Brad Riley, watched Mr. Laughrin drive away from the store in his two-door Pontiac, accompanied by a passenger, Mr. Michel. Mr. Laughrin had agreed to help Mr. Michel obtain fuel for his vehicle after his car ran out of gas. Officer Riley knew Mr. Laughrin from past traffic violations and was aware his license had previously been suspended. The officer followed the vehicle for approximately half a mile before pulling Mr. Laughrin over to determine whether he was driving with a valid license. When Officer Riley turned on his emergency lights, he observed Mr. Michel moving around in the front seat of the car and reaching toward the back seat area. Mr. Laughrin

subsequently stopped his car under a light post, and Officer Riley illuminated the vehicle with his own lights.

As Officer Riley approached the vehicle, Mr. Michel continued to move around and reach toward the rear of the vehicle. When Officer Riley reached the car, he asked Mr. Laughrin for his driver's license, car registration, and proof of insurance. Mr. Laughrin admitted he did not have any paperwork with him regarding the car, but stated he had renewed his licence. A subsequent computerized driver's license check indicated Mr. Laughrin's license was valid.

As Officer Riley was speaking to Mr. Laughrin, the officer used his flashlight to see inside the vehicle. He noticed what appeared to be the barrel of a gun behind the driver's seat, pointed toward the driver's side door. The gun was easily within reach of both Mr. Laughrin and Mr. Michel. Officer Riley immediately stepped back from the vehicle and ordered the men to place their hands on the dashboard and not to move. He then called for the assistance of a backup officer. Despite his directions to the men, Officer Riley observed Mr. Michel attempt to reach behind the seat toward the area where the weapon was located. The officer had to tell Mr. Michel several times to keep his hands on the car's dashboard. Officer Riley testified he did not see how close Mr. Michel got to the shotgun, nor whether he was actually specifically reaching for the gun. The officer also testified he did not have any knowledge as to how the gun came to be

in Mr. Laughrin's car.

When the backup officer arrived, Mr. Laughrin and Mr. Michel were told to exit the vehicle and were temporarily handcuffed while the officers removed the gun. Mr. Laughrin said the gun belonged to a friend, whom he did not identify. The gun, which neither had a serial number nor was registered with the National Firearms Registration and Transfer Record, was a Mossberg .410 gauge shotgun with an overall length of seventeen and a half inches and a barrel length of ten and three eights inches. The weapon was thus a sawed off shotgun.

Neither man was arrested. After the gun was secured, one of the other officers retrieved the gas can from Mr. Laughrin's car and drove Mr. Michel back to his own vehicle. Mr. Laughrin was also permitted to leave the scene. The gun was not processed for fingerprints, but it was successfully test fired.

Over a year later, a grand jury issued a seven count indictment against Mr. Michel and Mr. Laughrin. Mr. Michel was charged with being a felon in possession of a Mossberg .410 gauge shotgun in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); possessing and aiding and abetting the possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5845(a)(2), 5861(d), 5871 and 18 U.S.C. § 2; and possessing and aiding and abetting the possession of a firearm not identified by a serial number in violation of 26 U.S.C. §§ 5861(i),

5871, and 18 U.S.C. § 2. A jury found Mr. Michel guilty on all counts.[1] In calculating his sentence, the district court classified Mr. Michel as an armed career criminal, *see* 18 U.S.C. § 924(e), U.S.S.G. § 4B1.4, and gave him concurrent sentences of 240 months on each count.

On appeal, Mr. Michel contends the evidence presented at trial was insufficient for a jury to find him guilty beyond a reasonable doubt of the charges against him. He also argues that the ACCA sentencing enhancement was erroneously applied to him in violation of the Sixth Amendment. We address each claim in turn.

---

[1]Mr. Laughrin was also found guilty of the counts against him, which included additional charges for being a felon in possession of two other firearms. 18 U.S.C. §§ 922(g)(1), 924(a)(2). In a separate appeal, Mr. Laughrin challenged the district court's denial of his motion to suppress the Mossberg shotgun found in his car, arguing that the traffic stop was unconstitutional. This court ruled in his favor, reversing the district court's denial of his motion to suppress, vacating his sentence, and remanding the case for further proceedings. *United States v. Laughrin*, 438 F.3d 1245 (10th Cir. 2006). Mr. Michel neither filed a motion to suppress in the district court nor joined Mr. Laughrin's motion, and he did not raise the issue on appeal prior to oral argument. Subsequent to the decision reversing Mr. Laughrin's conviction, Mr. Michel filed a motion seeking to supplement the issues on appeal with the suppression issue. We deny the motion. "A motion to suppress evidence must be raised prior to trial; the failure to so move constitutes a waiver . . . ." *United States v. Meraz-Peru*, 24 F.3d 1197, 1198 (10th Cir. 1994); FED. R. CRIM. PRO. 12(e). Although we have recognized there may be circumstances in which we might apply the plain error rule to suppression issues raised for the first time on appeal, *see United States v. Brooks*, 438 F.3d 1231, 1240 & n.4 (10th Cir. 2006); *Meraz-Peru*, 24 F.3d at 1198; *United States v. Dewitt*, 496 F.3d 1497, 1501-02 (10th Cir. 1991), we decline to do so here where the issue was not raised in the regular course of briefing.

## II

We review sufficiency of the evidence claims *de novo*. *See United States v. Higgins*, 282 F.3d 1261, 1274 (10th Cir. 2002). "In doing so, we view the evidence in the light most favorable to the government and determine whether a reasonable jury could have found the defendant guilty of the crime beyond a reasonable doubt." *United States v. Hamilton*, 413 F.3d 1138, 1143 (10th Cir. 2005) (internal citations and quotations omitted). We do not "weigh conflicting evidence or second-guess the fact-finding decisions of the jury," *United States v. Summers*, 414 F.3d 1287, 1293 (10th Cir. 2005), but instead must determine whether "based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom," the jury's verdict was supported by sufficient evidence. *United States v. Smith*, 133 F.3d 737, 742 (10th Cir. 1997).

Juries are not permitted to convict a defendant based on speculation or mere suspicion.

> While the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than speculation and conjecture to be reasonable, and caution must be taken that the conviction not be obtained by piling inference on inference. . . . A jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such [an inference] is infirm because it is not based on the evidence.

*United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995) (citation and quotation marks omitted). Our prohibition against piling inference upon inference

-6-

"indicates that at some point along a rational continuum, inferences may become so attenuated from underlying evidence as to cast doubt on the trier of fact's ultimate conclusion." *Summers*, 414 F.3d at 1295. Certainly, reasonable inferences supported by other reasonable inferences which have an evidentiary basis may warrant a conviction. Nonetheless, where a conviction appears to be based on multiple and successive inferences, we must exercise caution and "measure the 'gap' between fact and conclusion before acquiescing in the jury's leap." *Id.*

We conclude the evidence presented by the government was sufficient to support the jury's determination that Mr. Michel was a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Under § 922(g), it is

> unlawful for any person – (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C.A. § 922(g)(1). In order to obtain a conviction against Mr. Michel under § 922(g), the government was required to prove that he had previously been convicted of a felony, he thereafter knowingly possessed a firearm, and such possession was in or affected interstate commerce. *See United States v. Taylor*, 113 F.3d 1136, 1144 (10th Cir. 1997); *United States v. Mains*, 33 F.3d 1222, 1228 (10th Cir. 1994); *United States v. Shunk*, 881 F.2d 917, 921 (10th Cir. 1989). At

trial, Mr. Michel stipulated to the first and third elements required for a conviction under § 922(g). We therefore focus our analysis solely on whether the government proved he knowingly possessed a firearm. *See Mains*, 33 F.3d at 1228 ("the only knowledge required for a § 922(g) conviction is knowledge that the instrument possessed is a firearm").

> For the purposes of § 922,
>
> [t]he term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3). Possession can either be actual or constructive. *United States v. Mills*, 29 F.3d 545, 549 (10th Cir. 1994). Constructive possession of an object exists when a person "knowingly hold[s] the power and ability to exercise dominion and control over it." *United States v. Lopez,* 372 F.3d 1207, 1211 (10th Cir 2004)(quotation and citation omitted). When a defendant has "'exclusive possession of the premises' where the object is found," the additional factors of knowledge, dominion, and control can be properly inferred. *United States v. Avery*, 295 F.3d 1158, 1177 (10th Cir. 2002) (quoting *Mills*, 29 F.3d at 549). If two or more people occupy a given space, however, the government is required to meet a higher burden in proving constructive possession. "In cases of joint occupancy, where the government seeks to prove constructive possession by

-8-

circumstantial evidence, it must present evidence to show some connection or nexus between the defendant and the firearm . . . ." *Mills*, 29 F.3d at 549. While we must exercise caution to ensure that juries do not determine guilt by piling inferences upon inferences, "an inference of constructive possession is reasonable if the conclusion flows from logical and probabilistic reasoning." *United States v. Lazcano-Villalobos*, 175 F.3d 838, 843 (10th Cir. 1999) (internal quotation marks omitted). Hence, when the government seeks a conviction based on constructive possession, it must present "evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon or contraband." *Mills*, 29 F.3d at 550 (citation omitted).

The evidence presented at trial indicated Mr. Michel was a joint occupant of the area in which the shotgun was found, Mr. Laughrin's car. In order to prove Mr. Michel had constructive possession of the gun, the government was required to show some sort of nexus between Mr. Michel and the gun, and that he "knowingly held the power to exercise dominion and control over the firearm." *United States v. Colonna*, 360 F.3d 1169, 1179 (10th Cir. 2004) (citing *United States v. Gorman*, 312 F.3d 1159, 1164 (10th Cir. 2002)). The government met this burden.

At trial, there was evidence that when Officer Riley turned on his emergency lights and signaled for Mr. Laughrin to pull to the side of the road, the

-9-

officer observed Mr. Michel moving back and forth and reaching into the back seat area of the car. Officer Riley subsequently saw the gun in this same area. Mr. Michel continued this movement as Officer Riley approached Mr. Laughrin's side of the vehicle. Even after the officer saw the weapon and directed the men to put their hands on the dashboard, Mr. Michel continued to make movements toward the area where the gun was located. From this evidence, the jury could make the rational inference that Mr. Michel's several attempts to reach into the back seat of Mr. Laughrin's vehicle were for the purpose of moving and hiding the gun so it would be out of Officer Riley's sight, thus establishing his knowledge of the existence of the firearm and his exercise of dominion and control over it.

We cannot say the same for Mr. Michel's convictions for being in possession of an *unregistered* firearm and a firearm *lacking a serial number*. *See* 26 U.S.C. §§ 5861(d), (i). According to the statute, "[i]t shall be unlawful for any person . . . (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or . . . (i) to receive or possess a firearm which is not identified by a serial number as required by this chapter . . . ." 26 U.S.C. §§ 5861(d), (i). For the purposes of § 5861, a firearm is more narrowly described as

> (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall

length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length . . . .

26 U.S.C. § 5845(a). In other words, a firearm meeting the definition of a sawed-off shotgun must be registered and identified by a serial number.

In order for the jury to convict Mr. Michel of possession of an unregistered firearm, the government was required to present sufficient evidence that Mr. Michel knowingly possessed the type of firearm specifically described in 26 U.S.C. § 5845(a), *i.e.*, that he knew the firearm had a barrel length of less than eighteen inches. *Staples v. United States*, 511 U.S. 600, 612, 619 (1994) (government required to prove defendant's knowledge of weapon's characteristics that brought it within scope of firearms registration statute). *See also United States v. Serrano*, 406 F.3d 1208, 1212 (10th Cir. 2005) (setting out elements for § 5861(d) conviction); *United States v. Sanders*, 240 F.3d 1279, 1281 (10th Cir. 2001) (government required to prove defendant's knowledge of weapon's characteristics); *United States v. Edwards*, 90 F.3d 199, 203 (7th Cir. 1996) (same); *Mains*, 33 F.3d at 1229 (same). Although the government was required to prove Mr. Michel knew the gun was a sawed-off shotgun, it was not required to further prove he knew it was supposed to be registered or that it lacked a serial number. *See United States v. Freed*, 401 U.S. 601, 607 (1971) (defendant not

-11-

required to know weapon is unregistered); *cf. United States v. Ruiz*, 253 F.3d 634, 637-39 (11th Cir. 2001) (government required to prove defendant knew he possessed a silencer; thereafter, fact that silencer has no serial number brings it within scope of act). Thus, as Supreme Court and circuit court case law indicates, while the government was not required to establish that Mr. Michel knew the gun was unregistered or lacked a serial number, *Freed*, 401 U.S. at 607; *Ruiz*, 253 F.3d at 637; *United States v. Walsh*, 791 F.2d 811, 820 (10th Cir. 1986); *United States v. Ranney*, 524 F.2d 830, 832 (7th Cir. 1975), the government *was* required to prove beyond a reasonable doubt that Mr. Michel knew the firearm in his possession had a barrel shorter than eighteen inches.

There is no question that the gun found in Mr. Laughrin's car satisfied the criteria of a sawed-off shotgun as set out in § 5845(a), that it was not registered with the National Firearms Registration and Transfer Record, that it lacked a serial number, and that it was operable. Likewise, there was sufficient evidence to show that Mr. Michel had constructive possession of the gun in Mr. Laughrin's car. Nevertheless, we are not persuaded the government carried its burden of presenting evidence beyond a reasonable doubt that Mr. Michel knew the shotgun had a barrel shorter than eighteen inches.

In closing arguments, and in speculating how the gun might have arrived in the back seat of Mr. Laughrin's car, the prosecutor figuratively placed himself

in the passenger seat.

> I'm sitting down . . . I'm the defendant, Mr. Michel. I have a shotgun in my hand. Whoop, the [police] lights go on, the cops are coming. What am I going to do with it? Throw it out the window? Am I going to reach and set it into the back seat, barrel pointing towards the door, which is where Officer Riley saw it?
> . . . .
>
> We don't know where [the gun] came from. Maybe when Mr. Michel's car broke down, and when Mr. Laughrin picked him up, maybe he had it. He's not going to leave it in the car. ["]I'll bring it in your car; let's go get gas.["] Ooops, the lights come on. What do you do with it? You don't leave it sitting there when you're holding it; you try to hide it or it's already there and you try to go for it.

Rec., vol. VIII at 44-46. The prosecutor also stated

> [t]he weapon was made from a shotgun. We had the measurements. We knew the characteristics of it. It's a sawed-off shotgun. It doesn't take a rocket scientist to look at that and say it's a sawed-off shotgun. Anybody would know that. [Mr. Michel] would know that and [he] did know that.

*Id.* at 12-13. The government further postulated that Mr. Michel saw the gun.

> . . . [I]t wasn't dark when [Mr. Michel and Mr. Laughrin] first got together. If he was getting in the car and he didn't know anything about [the gun] and he reached in the back seat, do you think he can see that sitting on the floorboard? I suggest to you that you'd see that. Oh, gee, a sawed-off shotgun.
> . . . . Isn't it reasonable to think that when you got in, you would see that? I submit to you that you would.

*Id.* at 47.

Of course, "evidence a defendant observed and handled [a] 'sawed-off

shotgun' is sufficient for a jury reasonably to infer that the defendant knew that

the weapon was shorter than twenty-six inches overall or had a barrel length of less than eighteen inches." *United States v. Jones*, 222 F.3d 349, 352 (7th Cir. 2000); *see also United States v. Gergen*, 172 F.3d 719, 725 (9th Cir. 1999) (fingerprint evidence indicating defendant handled weapon could allow jury to make reasonable inference that defendant was aware of gun's characteristics); *United States v. Jackson*, 124 F.3d 607, 613-14 (4th Cir. 1997) (evidence shotgun was in defendant's possession before and after its barrel length was altered was sufficient for jury to conclude defendant knew of gun's characteristics); *United States v. Moore*, 97 F.3d 561, 564 (D.C. Cir. 1996) (jury could conclude defendant was aware weapon was sawed-off shotgun where evidence included defendant's admission he had handled weapon prior to shortening of the gun's barrel, testimony that after the gun's alteration defendant instructed others in his home to move gun for safety reasons, and evidence of defendant's observation of weapon with shortened barrel); *Mains*, 33 F.3d at 1230 (defendant's involvement in sawing off shotgun was evidence he knew gun's characteristics). Here, however, the government presented absolutely no evidence that Mr. Michel ever observed or handled the gun. Rather, the evidence indicated that it was getting dark when Mr. Laughrin and Mr. Michel were first seen together at the gas station, so dark in fact that when Officer Riley stopped the men soon thereafter he had to use his flashlight to see into the vehicle. Officer Riley testified he was not

able to see if Mr. Michel was able to actually reach the weapon, and no efforts were made to determine if Mr. Michel's fingerprints were on the gun.

The government's hypotheticals suggesting that perhaps Mr. Michel was sitting in the front seat of Mr. Laughrin's car holding the sawed-off shotgun in his lap, or saw the gun in the back seat when he was getting into Mr. Laughrin's car, are just that – hypotheticals. While the government's scenarios may not be unreasonable, the inferences required to support them are not undergirded by sufficient evidence to establish them beyond a reasonable doubt. The government did not ask the jury to begin with facts that could support rational inferences. Instead the government asked the jury to begin with inferences to support other inferences. The government began with the inference that Mr. Michel saw and/or handled the gun to lead the jury to the subsequent inference that Mr. Michel had knowledge of the gun's characteristics. To allow such an inferential leap to support a conviction would permit the jury to convict Mr. Michel based on "a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such [an inference] is infirm because it is not based on the evidence." *Jones*, 44 F.3d at 865 (citation and quotation omitted).

The evidence presented to the jury established that Mr. Michel was in a car in which a gun was found and that Mr. Michel was seen reaching toward the area where the gun was located. The evidence also indicated that Mr. Michel

-15-

continued to reach toward that area despite directions to the contrary by Officer Riley. From this evidence, a jury could make the reasonable inference that Mr. Michel knew there was a gun in the car and that he was able to exercise dominion and control over it. However, this evidence was far from sufficient to permit the jury to conclude beyond a reasonable doubt that Mr. Michel also knew the gun's barrel had been shortened. We therefore reverse Mr. Michel's convictions for possession of an unregistered sawed-off firearm, *see* 28 U.S.C. § 5861(d), and for possession of the same firearm without a serial number, *id.* § 5861(i).

## III

Mr. Michel also challenges the district court's enhancement of his sentence under the Armed Career Criminal Act (ACCA), contending it violated his Sixth Amendment rights. Pursuant to that statute, and as relevant here, a sentencing court is required to impose a sentence of not less than fifteen years upon a defendant who is found guilty of violating 18 U.S.C. § 922(g) and who has "three previous convictions . . . for a violent felony . . . committed on occasions different from one another." 18 U.S.C. § 924(e)(1).[2] Mr. Michel does not contest the existence of his three prior violent felony convictions. Rather, he claims that

---

[2] Absent the ACCA enhancement, Mr. Michel's maximum sentence for being a felon in possession under 18 U.S.C. § 922(g)(1) would have been ten years. *See* 18 U.S.C. § 924(a)(2).

-16-

pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny,[3] whether his prior convictions were committed "on occasions different from one another," 18 U.S.C. § 924(e)(1), is a factual question that must be determined by a jury beyond a reasonable doubt, not by the sentencing court. Reviewing this claim *de novo*, *United States v. Scull*, 321 F.3d 1270, 1281 (10th Cir. 2003), we reject Mr. Michel's argument.

We are guided by our decision in *United States v. Moore*, 401 F.3d 1220 (10th Cir. 2005). There we examined whether the ACCA's provision that a defendant's sentence be enhanced if the defendant had previously been convicted of a "violent felony," 18 U.S.C. § 924(e)(1), ran afoul of the rule in *Apprendi* that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490 (emphasis added). We concluded in *Moore* that whether the defendant had previously been convicted of a violent felony fell within *Apprendi*'s prior conviction exception. *Moore*, 401 F.3d at 1224-26.

---

[3]Prior to sentencing, Mr. Michel challenged the application of the ACCA on the basis that any determination that his prior violent felonies "occurred on occasions different from one another," 18 U.S.C. § 924(e)(1), was a fact other than that of a prior conviction and thus had to be found by a jury beyond a reasonable doubt pursuant to *United States v. Blakely*, 542 U.S. 296 (2004), and *Apprendi*. On appeal, he notes the Supreme Court's extension of *Blakely* to federal sentencing in *United States v. Booker*, 125 S. Ct. 738 (2005).

Our conclusion in *Moore* was influenced by cases from the Second, Sixth and Seventh Circuits which rejected arguments postulating that the question of whether prior convictions were committed on occasions different from one another had to be charged in an indictment and proved to a jury. *See United States v. Burgin*, 388 F.3d 177, 186 (6th Cir. 2004); *United States v. Morris*, 293 F.3d 1010, 1012-13 (7th Cir. 2002); *United States v. Santiago*, 268 F.3d 151, 156-57 (2d Cir. 2001). The courts reasoned that *Apprendi* left to the judge,

> the task of finding not only the mere fact of previous convictions but other related issues as well. Judges frequently must make factual determinations for sentencing, so it is hardly anomalous to require that they also determine the "who, what, when, and where" of a prior conviction. . . . [W]e are satisfied . . . that § 924(e)'s "different occasions" requirement falls safely within the range of facts traditionally found by judges at sentencing and is sufficiently interwoven with the facts of the prior crimes that *Apprendi* does not require different fact-finders and different burdens of proof for Section 924(e)'s various requirements.

*Santiago*, 268 F.3d at 156-57; *see also Burgin*, 388 F.3d at 184-86; *Morris*, 293 F.3d at 1013.

Since we decided *Moore*, another circuit has concluded that the determination of whether prior convictions "occurred on occasions different from one another" 18 U.S.C. § 924(e)(1), need not be made by a jury to result in an enhanced sentence that passes constitutional muster. In *United States v. Thompson*, 421 F.3d 278 (4th Cir. 2005), the Fourth Circuit held that whether a series of burglaries were separate episodes was a factual issue "inherent in the

convictions themselves, and thus . . . not among the kind of facts extraneous to a conviction that *Blakely* . . . requires a jury to find." *Id.* at 286. We agree and hold that whether prior convictions happened on different occasions from one another is not a fact required to be determined by a jury but is instead a matter for the sentencing court.[4]

Our initial conclusion regarding Mr. Michel's sentencing argument, however, does not entirely dispose of his challenge to the enhancement of his sentence under the ACCA. We must still address whether the district court erred in actually finding that Mr. Michel's three prior felony convictions occurred on different occasions. We review *de novo* the district court's application and interpretation of the ACCA. *United States v. Tisdale*, 921 F.2d 1095, 1098 (10th Cir. 1990).

In October of 1996 and prior to the offense at issue in this case, Mr. Michel pled guilty in New Mexico state court to two counts of aggravated assault on a police officer and one count of attempted robbery. In concluding that Mr. Michel's sentence should be enhanced under the ACCA, the district detailed the

---

[4]As we did in *United States v. Moore*, 401 F.3d. 1220, 1224 (10th Cir. 2005), we give short shrift to Mr. Michel's argument that the prior conviction exception laid out in *Apprendi*, which found its genesis in *Almendarez-Torres v. United States*, 523 U.S. 244 (1998), is in decline. Unless and until the Supreme Court determines otherwise, we will continue to follow the rule laid out in *Almendarez-Torres*.

following facts surrounding Mr. Michel's prior convictions.[5]

On April 13, 1996, Mr. Michel was stopped by the police for a minor traffic violation. When the officer approached his car and spoke with him, Mr. Michel pulled out a gun, pointed it at the officer, and then fled the scene in his car. The officer gave chase but lost Mr. Michel for a short period of time. Mr. Michel subsequently drove to a convenience store, ran in, grabbed the cashier by the neck, and demanded she give him all her money. When she did not immediately comply, he drew his gun and put it to her chest, again demanding that she give him all her money. Despite the cashier's protests that she did not have any money, Mr. Michel tried to open the cash register.

At this point, the police officer who had initially stopped Mr. Michel, accompanied now by backup, observed Mr. Michel's car in the convenience store parking lot. The officers entered the lot and exited their vehicles. Mr. Michel fled the store, got into his car, and drove off. One of the officers gave chase. A second officer who was in the vicinity and heard on his radio that Mr. Michel had drawn a gun on an officer, started driving toward the convenience store to see if he could assist. As he approached the store, Mr. Michel's car came out of an alley and headed toward his vehicle. Mr. Michel crossed the center line of the

_____

[5]Mr. Michel does not challenge the accuracy of the facts relied upon by the district court. Rather, he claims that his three convictions should, as a matter of law, be treated as one event under 18 U.S.C. § 924(e)(1).

street and hit the officer head on.

As a result of these events, Mr. Michel was charged with and pled guilty to aggravated assault for pulling a gun on the first officer, attempted robbery, and aggravated assault for driving into the second officer. In the instant action, the government claimed that the three violent felony convictions occurred on different occasions from one another and therefore warranted application of the ACCA. Despite Mr. Michel's legal objections, the district court agreed with the government and sentenced Mr. Michel accordingly.

In affirming the district court, we are governed by our ruling in *Tisdale*. There, we held a defendant can receive an enhanced sentence under the ACCA where his prior convictions "arise from separate criminal transactions." *Tisdale*, 921 F.2d at 1098 (citing *United States v. Bolton*, 905 F.2d 319, 323 (10th Cir. 1990)); *see also United States v. Johnson*, 130 F.3d 1420, 1430 (10th Cir. 1997) (enhancement under ACCA meant to apply to "multiple criminal episodes distinct in time"). In *Tisdale*, the government sought to enhance a defendant's sentence under the ACCA, by relying on three burglary convictions which occurred on the same date. "The defendant broke into a shopping mall and burglarized two private businesses and a post office located inside the shopping mall." *Tisdale*, 921 F.2d at 1098. The district court concluded these events happened successively and the ACCA applied. *Id.* On appeal, we rejected the defendant's

-21-

argument that the three burglaries should be treated as one criminal episode because the events happened on the same night and at the same general location. We reasoned the separate offenses were "distinct in time," and that after the defendant had successfully burglarized one business, he was free to leave the mall and cease his criminal activity. *Id.* at 1098-99. The defendant instead made the choice to engage in additional criminal episodes, which in the aggregate included breaking and entering into three separate structures. Based on these facts, we held the trial court properly enhanced the defendant's sentence under § 924(e)(1).

Mr. Michel's criminal episodes are even more distinct than those in *Tisdale*. Mr. Michel committed three successive criminal incidents at three separate locations against three different victims. While these events all occurred within a short period of time, Mr. Michel had the opportunity after assaulting the first officer simply to flee the scene rather than attempting to rob the convenience store and assaulting the second officer. His choice to do otherwise is "evidence of his intent to engage in . . . separate criminal episode[s]." *Tisdale*, 921 F.2d at 1099; *see also, e.g., Johnson*, 130 F.3d at 1430-31 (ACCA enhancement appropriate where defendant engaged in three different drug transactions over three separate days); *United States v. Hudspeth*, 42 F.3d 1015, 1020-21 (7th Cir. 1994) (same where defendant robbed three separate businesses in strip mall); *United States v. Brady*, 988 F.2d 664, 668-69 (6th Cir. 1993) (same for defendant

who engaged in two armed robberies against different victims in different locations); *United States v. Washington*, 898 F.2d 439, 441-42 (5th Cir. 1990) (same where two separate robberies happened at different times, even though against same victim at same location); *United States v. Schieman*, 894 F.2d 909, 913 (7th Cir. 1990) (same for completed robbery of cake store followed by assault of police officer).  We find no error in the district court's application of the ACCA to Mr. Michel.

**IV**

Finally, Mr. Michel contends the ACCA is unconstitutionally vague because it is difficult to predict when certain criminal actions will be deemed to have been "committed on occasions different from one another."  18 U.S.C. § 924(e)(1).  Therefore, he maintains, we should apply the rule of lenity to his case. We review this issue *de novo*, *United States v. Wynne*, 993 F.2d 760, 764 (10th Cir. 1993), and rule against Mr. Michel.

The void-for-vagueness doctrine provides that a penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  Hence, "a potential defendant must have some notice or fair warning

that the conduct contemplated is forbidden by the criminal law." *United States v. Protex Indus., Inc.*, 874 F.2d 740, 743 (10th Cir. 1989) (quotation omitted). Where a vagueness challenge does not implicate First Amendment freedoms, our review is limited to the "application of the statute to the particular conduct charged." *United States v. Reed*, 114 F.3d 1067, 1070 (10th Cir. 1997). If a statute is ambiguous, the rule of lenity indicates that courts should interpret it in favor of the defendant. *United States v. Onheiber*, 173 F.3d 1254, 1256 (10th Cir. 1999). "The rule of lenity, however, applies only in cases where there is a 'grievous ambiguity or uncertainty in the language and structure' of a provision." *Id.* (quotation and citations omitted).

Mr. Michel contends the ACCA's language mandating an enhanced sentence when a defendant has three violent felony convictions "committed on occasions different from one another," 18 U.S.C. § 924(e)(1), is unconstitutionally vague as applied to him. He argues there is no precise test among the circuit courts to determine whether crimes have been committed on occasions different from one another, resulting in inconsistent outcomes in the interpretation of § 924(e)(1). Consequently, he did not have fair warning that his conduct could subject him to an increased penalty. We disagree.

In reviewing enhancements under § 924(e)(1), courts have characteristically ruled that "offenses were committed on occasions different from one another if

they arose out of separate and distinct criminal episodes." *United States v. Jackson*, 113 F.3d 249, 253 (D.C. Cir. 1997) (quotations and citations omitted); *see also, e.g., United States v. McElyea*, 158 F.3d 1016, 1020-21 (9th Cir. 1998); *Johnson*, 130 F.3d at 1431; *United States v. Graves*, 60 F.3d 1183, 1185-86 (6th Cir. 1995); *Hudspeth*, 42 F.3d at 1019; *Brady*, 988 F.3d at 668-69; *Tisdale*, 921 F.2d at 1098-99; *Washington*, 898 F.2d at 441. Courts' determinations as to when crimes have arisen out of separate and distinct criminal episodes, of course, have varied based on the different facts presented. *Compare United States v. Murphy*, 107 F.3d 1199, 1210 (6th Cir. 1997) (crimes did not occur on occasions different from one another, because there was "no principled way of distinguishing between the end of the first burglary and the beginning of the second") *with Brady*, 988 F.2d at 669 (crimes occurred on occasions different from one another where defendant "committed crimes against different victims at different places and at distinctly different times"). As relevant to Mr. Michel, however, courts have been quite consistent in holding that crimes occurring at separate times, at separate locations, and against separate victims constitute offenses committed on occasions different from one another. *See, e.g., Brady*, 988 F.2d at 669; *Hudspeth*, 42 F.3d at 1021; *Tisdale*, 921 F.2d at 1099; *Schieman*, 894 F.2d at 913. Mr. Michel assaulted a police officer, attempted to rob a convenience store clerk, and then assaulted a second officer. While all of these events happened within a

close time frame, they nonetheless were different crimes, perpetrated at different times, in separate locations, and against separate victims.

We do not discount that there may be instances in which determining whether a series of crimes fits within § 924(e)(1) is not immediately revealed by the statute and requires a highly fact bound inquiry. In evaluating whether 18 U.S.C. § 924(e)(1) is vague, however,

> we must take into account the "'limitations in the English language with respect to being both specific and manageably brief'" and not deem void for vagueness those laws which are "'set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest.'"

*United States v. Solomon*, 95 F.3d 33, 35 (10th Cir. 1996) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973) (quoting *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 578-79 (1973))). That different courts might draw subtle distinctions as to what constitutes crimes occurring on occasions different from one another does not necessarily render the statute vague for constitutional purposes. *United States v. Graham*, 305 F.3d 1094, 1105 (10th Cir. 2002).

The ACCA dictates an enhanced sentence for defendants who have committed three prior violent felonies occurring on occasions different from one another. 18 U.S.C. § 924(e)(1). This language is sufficiently definite to let a person of ordinary intelligence, such as Mr. Michel, know that if he committed

three separate crimes on the same day against separate victims at separate locations, his sentence would be enhanced under the ACCA. The statute is not vague as applied to Mr. Michel and the rule of lenity is therefore not triggered.

**V**

In light of the foregoing, we **AFFIRM** Mr. Michel's conviction under 18 U.S.C. § 922(g)(1) but we **REVERSE** his convictions under 28 U.S.C. §§ 5861(d) and (i) and **REMAND** to the district court to vacate Mr. Michel's sentence and to resentence him in accordance with this opinion.