FILED
United States Court of Appeals
Tenth Circuit

October 2, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

NATHANIEL RAY STOTTS,

    Defendant - Appellant.

No. 08-6192
(W.D. Okla.)
(D.Ct. No. 5:08-CR-00042-D-1)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McKAY**, and **O'BRIEN**, Circuit Judges.
_____

The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th

Cir. R. 34.1(G). We accept this case for submission on the briefs.

Nathaniel Ray Stotts was convicted of being a felon in possession of a

firearm and ammunition. He was sentenced to 210 months imprisonment under

the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), and USSG §4B1.4.

He appeals from the district court's denial of his motion to suppress and the

---

[*] This order and judgment is not binding precedent. 10th Cir. R. 32.1(A). Citation to orders and judgments is not prohibited. Fed. R. App. 32.1. But it is discouraged, except when related to law of the case, issue preclusion or claim preclusion. Any citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). 10th Cir. R. 32.1(A).

application of the ACCA.  We affirm.

## I. BACKGROUND

On November 18, 2007, Stotts spent the day at his home in Oklahoma City with his wife, one of her female relatives named Angel, and Michael Gardner, one of his stepsons.   At one point in the evening, Michael and Stotts went fishing. While at the river they fired a handgun Stotts was carrying.  After firing the gun Stotts put it in the waistband of his pants.  When they returned home at approximately 11:45 PM Stotts became upset because he could not find a bottle of liquor.  An argument ensued during which Stotts told Angel he was going to get family "to take care of her."  (R. Vol. 3 at 188.)  Angel called 911 at 11:59 PM to report a domestic disturbance at the residence.  A police officer responded but no arrests were made.

Sometime between 12:30 and 1:00 AM on November 19, 2007, Michael called his brother, Christopher Gardner, in Alaska and told him of the evening's events - including the threat against Angel.  Based upon that information Christopher called the Oklahoma City Police Department at 2:02 AM and requested officers visit Stotts' residence to check the welfare of those present. Christopher told dispatch Stotts was a convicted felon, intoxicated, passed out in the backyard, carrying a firearm, and had made threats against people in his house.

When officers arrived at Stotts' residence, they interviewed Michael who

confirmed Stotts was a felon who had a gun, had threatened to kill someone, and had hurt Michael's mother in the past. Michael told the officers Stotts was passed out in a lawn chair in the backyard. He warned an officer to be careful "because [Stotts] might wake up slinging." (R. Vol. 3 at 196.) Three officers entered the backyard through the unlocked gate of a chain-link fence. Two officers grabbed Stotts by his arms, woke him, and identified themselves as police officers. One asked Stotts if he had a weapon. He said he did. The police recovered the loaded gun from his waistband. The officers then conducted a pat-down search of Stotts' person and discovered a bag containing live rounds of .380 caliber ammunition. Stotts was arrested and indicted for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1).

Prior to trial, Stotts moved to suppress the evidence seized when the police entered his backyard.[1] He argued there was no probable cause justifying police encroachment onto his property. The government maintained Stotts' intoxication, threat to kill another individual and possession of a firearm created an exigent circumstance allowing the police to enter the property. The government stressed the search was limited in manner and scope and was necessary to investigate the welfare of those on the property. The district court agreed and denied Stotts' motion to suppress.

---

[1] Stotts also moved to suppress statements he made before he was advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The district court granted the motion in part and denied in part. Neither party has appealed from this ruling.

After Stotts was convicted by a jury, the United States Probation Office compiled a Presentence Investigation Report (PSR). The PSR recommended Stotts be sentenced as an armed career criminal under 18 U.S.C. § 924(e), which provides for a mandatory minimum sentence of 15 years imprisonment,[2] because he had previously been convicted of at least three violent felonies.[3] Applying USSG §4B1.4, the armed career criminal guideline, the PSR determined Stotts' total offense level was 33. With a total offense level of 33 and a Criminal History Category V, the resulting advisory guideline range was 210 to 262 months imprisonment.

Stotts objected to the PSR. Relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Shepard v. United States*, 544 U.S. 13 (2005), Stotts argued only the jury could determine whether his previous convictions were violent felonies or serious drug offenses and whether they were committed on different occasions as required by the ACCA. The district court rejected this argument and sentenced Stotts to 210 months incarceration.

---

[2] 18 U.S.C. § 924(e) reads in relevant part: "In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years . . . ."

[3] In support of the application of the ACCA, the PSR relied upon Stotts' previous convictions for (1) assault with a dangerous weapon in 1982 for attempting to stab an Oklahoma City police officer with a butcher knife, (2) rape in 1983 for having sexual intercourse with a girl under the age of 14, (3) escape from a penitentiary in 1995 for failing to report to a pre-parole officer, and (4) assault and battery with a dangerous weapon in 2005 for threatening to kill his wife and cutting her throat.

## II. DISCUSSION

Stotts appeals from the denial of his motion to suppress and the court's application of the ACCA.

A. <u>Warrantless Entry onto Stotts' Property</u>

The Fourth Amendment generally prohibits a warrantless entry into a person's home, whether to make an arrest or to search for specific objects. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). But there are exceptions to the general rule. "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *United States v. Najar*, 451 F.3d 710, 714 (10th Cir. 2006) (quotations omitted). To justify a search based on exigent circumstances we require: "(1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable . . . ." *Id.* at 718.

"The existence of exigent circumstances is a mixed question of law and fact." *United States v. Anderson*, 981 F.2d 1560, 1567 (10th Cir. 1992). We review the district court's factual findings for clear error, viewing the evidence in the light most favorable to those findings. *United States v. Rhiger*, 315 F.3d 1283, 1287 (10th Cir. 2003). "The ultimate question regarding the reasonableness of the search is a question of law which we review *de novo*." *Id.* "We evaluate whether the officers were confronted with reasonable grounds to believe there

was an immediate need guided by the realities of the situation presented by the record from the viewpoint of prudent, cautious, and trained officers." *Najar*, 451 F.3d at 718-19 (quotations omitted). We are not limited to considering only the evidence introduced at the suppression hearing; we may also consider any evidence properly admitted at trial, even though that evidence may not have been introduced at the pretrial hearing. *United States v. Harris*, 313 F.3d 1228, 1233 (10th Cir. 2002).

Stotts maintains the facts here do not establish an immediate need to enter his property. He argues a drunken man, passed out alone in his own backyard, does not create an exigent circumstance, especially when the officers did not observe a threat or even a weapon. He omits relevant facts.

This was the second 911 call from Stotts' residence in two hours. The police were responding to a call requesting the police check on the welfare of the people at Stotts' home because Stotts had threatened at least one of them. The caller had informed the police Stotts was drunk, armed, a felon, and had threatened an individual in the home. Michael confirmed this information when the officers arrived at the residence and further informed them Stotts had a history of violence. Michael told the officers he was "scared." (R. Vol. 2 at 8.) "He was afraid that if Mr. Stotts found out that he . . .was talking to the police . . . he would be retaliated against by Mr. Stotts." (*Id.*) His nervousness when speaking with the police, his quiet tone, and his warning that Stotts "might wake up

slinging" supported these statements. (*Id.* at 196.) The officers had reasonable grounds to believe the situation needed to be diffused immediately.

Similarly, the search satisfied the second prong of our test because it was reasonably limited in nature. The police walked through an unlocked chain-link fence and approached Stotts directly. They restrained him for their own safety and asked if he had a gun. When Stotts admitted he had a weapon, they retrieved it and conducted a pat-down search of his person to determine if he possessed other weapons. When they found the ammunition, the search ended and Stotts was arrested. Neither the manner nor the scope of the search was unreasonable. It was confined to Stotts' person and involved no other intrusion into his privacy.

The officers had reasonable grounds to believe the welfare of a person on the premises presented an immediate need to investigate and they reasonably effected the search. Consequently, the entry and search of Stott' backyard was lawful.

## B. Application of ACCA

Stotts also challenges the district court's authority to enhance his sentence under the ACCA. The ACCA mandates a minimum 15-year prison sentence for anyone possessing a firearm after three prior convictions for serious drug offenses or violent felonies. *See* 18 U.S.C. § 924(e). In *Apprendi,* the Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury,

and proved beyond a reasonable doubt." 530 U.S. at 490. Stotts does not claim his prior convictions are not separate prior violent felony convictions. Rather, he argues that under *Apprendi* and its progeny, the court was prohibited from applying the ACCA because a jury had not determined beyond a reasonable doubt the predicate facts—his previous convictions were committed "on occasions different from one another" and involved a "violent felony." 18 U.S.C. § 924(e).

However, in *Shepard*, the Supreme Court determined if the district court confines itself to consideration of only "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information," a district court's determination to apply the ACCA to a defendant who has pled guilty does not run afoul of *Apprendi*. 544 U.S. at 26. Stotts' argument relies on Justice Thomas's concurrence in *Shepard* which expressed growing doubt within the Supreme Court regarding the practice of allowing sentencing judges to determine whether a prior conviction involved a violent felony. *See Shepard*, 544 U.S. at 27-28 (Thomas, J., concurring in part). While these words may foreshadow future action by the Court, as we explained in *United States v. Harris, Shepard* did not announce a departure from earlier precedent. 447 F.3d 1300, 1303 n.1 (10th Cir. 2006).

Under our precedent, a district court may properly determine whether a defendant has three previous violent felony convictions which occurred on

separate occasions for purposes of applying the ACCA. *See United States v. Moore*, 401 F.3d 1220, 1225-26 (10th Cir. 2005) (violent felony and number of convictions); *United States v. Michel*, 446 F.3d 1122, 1133 (10th Cir. 2006) (different occasions); *see also Harris,* 447 F.3d at 1303-06 (reaffirming both *Moore* and *Michel* after *Shepard*). "Unless and until the Supreme Court determines otherwise, we will continue to follow [this] applicable precedent." *Harris*, 447 F.3d at 1303 n.1. Because Stotts does not argue the district court impermissibly considered documents outside *Shepard's* purview, the district court did not err in concluding his convictions were sufficient predicates for the application of the ACCA.

**AFFIRMED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge